UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Thomas Bruce Wenzel**

   **v.**                                            Civil No. 11-cv-269-PB
                                                              Opinion No. 2012 DNH 117

**Michael J. Astrue, Commissioner,**
**Social Security Administration**


**MEMORANDUM AND ORDER**

Thomas Wenzel seeks judicial review of a decision by the Commissioner of the Social Security Administration denying his application for disability insurance benefits. He contends that the Administrative Law Judge ("ALJ") who heard his case failed to properly weigh the medical opinion evidence and erred in assessing the credibility of his subjective reports of pain. For the reasons provided below, I affirm the Commissioner's decision.

**I.  BACKGROUND**[1]

Wenzel applied for disability insurance benefits on March

---

[1] Except where otherwise noted, the background information is drawn from the parties' Joint Statement of Material Facts (Doc. No. 13). See LR 9.1(b). I cite to the administrative record with the notation "Tr."

1

2, 2009, when he was fifty-one years old.  Tr. 20.  He alleged a disability onset date of October 2, 2008, due to a back injury, arthritis, carpal tunnel syndrome, and depression.  Wenzel completed high school, and worked as a painter for approximately twenty-five years.  Tr. 20-21.

## A.   Medical Evidence

Between April 16 and May 30, 2008, Wenzel sought treatment for his back pain at the New Hampshire NeuroSpine Institute.  He complained of a twenty-five-year history of lower back pain that was caused by his heavy workload as a self-employed painter.  He reported that his pain had become worse over the past eighteen months.  An MRI of Wenzel's lumbar spine showed minor degenerative disc and facet joint disease.

Dr. Theodore Jacobs, who treated Wenzel at the NeuroSpine Institute, reported in a May 16, 2008 letter that, upon examination, Wenzel's upper and lower extremities were neurologically intact; his spine was nontender; a straight leg raise test was negative[2]; and extension and flexion did not produce discomfort in his neck or lower back.  Dr. Jacobs noted that he was unsure whether Wenzel had a surgically correctable

---

[2] In his brief, Wenzel notes that a straight leg raise test is used to determine whether a patient's back pain is due to an underlying herniated disc.  Doc. No. 9-1 at 6 n.1.

abnormality in his spine.

Wenzel again complained of lower back pain to Dr. Jacobs on May 30, but, upon examination, movement of his neck and lower back did not produce discomfort and a straight leg raise test was again negative.  Dr. Jacobs noted that an MRI, which revealed severe spinal stenosis and disc herniation, Tr. 183, "overstated any disease in his lumbar spine," Tr. 181, and that a myelogram and CT scan showed only "some mild stenosis" at L4-5, Tr. 181.  Dr. Jacobs stated that Wenzel's exam was benign. He reassured Wenzel that he was not a surgical candidate, and recommended that Wenzel seek pain management.

Beginning in February 2008, Wenzel saw Dr. Robert Quirbach of the St. Joseph Family Medical Center for his complaints of chronic back pain.[3]  Examinations performed through June 2009 showed that Wenzel had tightness or tenderness, along with decreased range of motion, in his lumbosacral spine, and that he also had some pain and tenderness in his cervical spine.  In July 2008, Dr. Quirbach noted that Wenzel was bilaterally positive on straight leg raise tests.  At a number of appointments, Dr. Quirbach stated that Wenzel was doing fairly

---

[3] Wenzel also complained to Dr. Quirbach about his depression, a fact that is not relevant to the issues presented for my review.

3

well and/or that his back pain was stable.  Tr. 151, 208, 214, 215, 216, 220, 225.  He also reported that Wenzel was taking Oxycontin, which was working well and sometimes controlled his pain.

On June 16, 2009, Dr. Hugh Fairley, a non-examining state agency physician, completed a physical RFC assessment of Wenzel. Dr. Fairley opined that Wenzel could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and push and/or pull without limitations.  Dr. Fairley opined that Wenzel had occasional postural limitations, and had no manipulative, visual, communicative, or environmental limitations.

Between late-June 2009 and October 2010, Wenzel continued to see Dr. Quirbach for his back pain.  Across a number of examinations, Wenzel continued to exhibit back pain and a decreased range of motion, along with variable levels of pain/distress.  Tr. 238-277.  Wenzel was bilaterally positive on a straight leg raise test performed in October 2009, and was again positive in several straight leg raise tests performed in the following months.  Tr. 238-73.

In a September 2010 appointment, Dr. Quirbach noted that

Wenzel's back pain had "been doing better recently."  Tr. 242.
After an examination performed the following month, Dr. Quirbach reported that Wenzel's back pain had been "stable," but that Wenzel was experiencing difficulty transitioning to a lower dose of Oxycontin.  Tr. 238.

On November 2, 2010, Dr. Quirbach completed a medical assessment of Wenzel's physical ability to perform work-related activities.  Dr. Quirbach stated that in an eight-hour day Wenzel could occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and walk with normal breaks for about three hours; and sit with normal breaks for about four hours.  Dr. Quirbach also stated that Wenzel could never twist, but could occasionally bend, crouch, climb stairs, and climb ladders.  He opined that Wenzel's impairments would cause him to be absent from work more than three times per month, and that Wenzel could not work eight hours a day, five days a week.

B.  **Hearing Testimony**

After Wenzel's application for disability insurance benefits was denied initially and upon reconsideration, he requested a hearing before an ALJ.  At his November 15, 2010 hearing, Wenzel was represented by an attorney, and appeared and

testified on his own behalf.  A vocational expert also testified.

Wenzel reported that in 2003, he injured his arms when he fell off a ladder.  He testified that he experienced shooting pains in his right arm, was unable to stretch his left arm, and experienced arthritis in his hands.  He stated that he also experienced pain due to a lower back and neck condition.  He testified that as a result of the Oxycontin that he took for his hands and back pain, he experienced side effects, including difficulty driving, a loss of concentration, and memory problems.  He reported that he was not receiving any treatment at the time aside from pain medication because his insurance company would not cover additional treatment.

Speaking about his functional capabilities, Wenzel stated that he could not sit for much more than an hour before needing to move around.  He reported that he could sometimes walk for twenty minutes at a time without sitting down or lying down.  When asked about his activities of daily living, Wenzel testified that during the day he watched television, stretched, and did some chores.

C.  **ALJ's Decision**

The ALJ denied Wenzel's application in a decision dated

December 23, 2010.  After determining that Wenzel had not engaged in substantial gainful activity since his disability onset date and that Wenzel's degenerative disc disease with associated back and neck pain was a severe -- though not a listing level -- impairment, the ALJ found that Wenzel retained the RFC to perform a full range of light work.  In accordance with that RFC, the ALJ determined that Wenzel, though unable to perform his past relevant work as a painter, could perform jobs existing in significant numbers in the national economy and therefore was not disabled.  Although the Decision Review Board selected Wenzel's claim for review, it did not complete its review during the time permitted, thereby leaving the ALJ's decision as the final decision of the Commissioner.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), I am authorized to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner.  My review "is limited to determining whether the ALJ used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).

The findings of fact made by the ALJ are accorded deference so long as they are supported by substantial evidence. Id. Substantial evidence to support factual findings exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.'" Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriquez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). If the substantial evidence standard is met, factual findings are conclusive even if the record "arguably could support a different conclusion." Id. at 770. Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

The ALJ is responsible for determining issues of credibility and for drawing inferences from evidence on the record. Ortiz, 955 F.2d at 769. It is the role of the ALJ, not the court, to resolve conflicts in the evidence. Id.

The ALJ follows a five-step sequential analysis for determining whether an applicant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The applicant bears the burden, through the first four steps, of proving that her impairments preclude her

from working.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth step, the Commissioner determines whether work that the claimant can do, despite her impairments, exists in significant numbers in the national economy and must produce substantial evidence to support that finding.  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

### III.  ANALYSIS

Wenzel challenges the Commissioner's decision on two principal grounds.  First, he contends that errors in the ALJ's evaluation of the medical opinion evidence led to an RFC determination that is unsupported by substantial evidence.  Second, he contends that the ALJ failed to sufficiently explain, by reference to the relevant criteria set out in 20 C.F.R. § 404.1529, why his subjective complaints of pain were not credible.  I address each argument in turn.

**A.   Medical Opinion Evidence & RFC Determination**

An ALJ must take into account the medical opinions in a claimant's case record when making a disability determination. 20 C.F.R. § 404.1527(b).  When the opinion of a treating physician is well supported and not inconsistent with other record evidence, it must be given controlling weight.  Id.;

9

Social Security Ruling 96-2p, 1996 WL 374188 (July 2, 1996) [hereinafter SSR 96-2p].  In all other instances, an ALJ must assess a number of factors to determine how much weight to give to an opinion, including: the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; the record evidence supporting the opinion; the consistency of the opinion with other record evidence; and whether the source is a specialist.  20 C.F.R. § 404.1527(c)(2).

   An ALJ must always provide "good reasons" in his decision for the weight accorded to a treating source's opinion.  Id. When an ALJ's decision is not favorable to the claimant, the decision must contain reasons for discounting the treating source's opinion that are "sufficiently specific to make clear to any subsequent reviewers" both "the weight the adjudicator gave" to the opinion and "the reasons for that weight."  SSR 96-2p.

    Wenzel first argues that the ALJ could not have relied on Dr. Fairley's June 16, 2009 opinion because Dr. Quirbach's treatment notes subsequent to that date undermine the basis of Dr. Fairley's opinion.  I disagree.  Although a medical opinion may no longer be due significant weight if it was based on a

materially incomplete record, see, e.g., Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir. 2007) (agency physician's opinion not due significant weight where, inter alia, claimant's condition deteriorated after date of opinion due to father's death); Shinn ex. rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1287 (11th Cir. 2004) (because agency physicians were not privy to the many crises for which claimant had not been hospitalized, their opinions were "based on woefully incomplete evidence" and should not have been accorded significant weight), in this case Wenzel has not identified any symptom or condition described by the treatment notes after June 16, 2009 that is not also indicated in the prior treatment notes.  Wenzel draws attention to two observations in Dr. Quirbach's more recent treatment notes: Wenzel's positive straight leg raise tests and limited range of motion in his lumbar region.  Both findings, however, were also described in the treatment notes prior to that date, see Tr. 145, 151, 152, and were therefore included in the portion of the record considered by Dr. Fairley.

   In other words, the ALJ was entitled to accord substantial weight to Dr. Fairley's opinion because the treatment notes of Dr. Quirbach that postdated Dr. Fairley's assessment continued to document the same complaints of pain and the same clinical

findings of which Dr. Fairley was already aware. Moreover, though they were not available to Dr. Fairley, Dr. Quirbach's post-June 16, 2009 treatment notes were available for consideration by the ALJ.[4] In his decision, the ALJ cited to recent instances where Dr. Quirbach described Wenzel's back condition as doing well or as stable, and I perceive no error in the ALJ's determination that those notes were not inconsistent with Dr. Fairley's opinion. See Ferland v. Astrue, No. 11-cv-123-SM, 2011 WL 5199989, at *4 (D.N.H. Oct. 31, 2011) (ALJ may rely on opinion of non-examining consultant who has not examined full record where other evidence does not establish greater limitations or where other evidence is arguably consistent with the assessment).

---

[4] Focusing on one aspect of Dr. Quirbach's more recent treatment notes, Wenzel briefly argues that the ALJ erred by noting a negative straight leg test result found by Dr. Jacobs while ignoring the several positive results found by Dr. Quirbach since October 2009. Wenzel reads too much into this small omission. First, the ALJ accurately described the results of Dr. Jacobs's neurological examination by noting that a straight leg test had come up negative. Second, an ALJ is not bound to directly address every piece of evidence in the record, see Rodriguez v. Sec'y of Health & Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1 (1st Cir. 1990) (per curiam; table, text available on Westlaw), and throughout his decision the ALJ demonstrated a strong understanding of the record evidence both supporting and contradicting his view. I find no error in the ALJ's decision to omit a single of Dr. Quirbach's clinical findings that was never described as important by any medical treatment provider, including Dr. Quirbach himself.

Wenzel next attacks the ALJ for giving limited weight to Dr. Quirbach's opinion.  The ALJ provided a number of "good reasons," however, for his decision to accord only limited weight to the opinion of Wenzel's treating physician, and those reasons are "sufficiently specific to make clear . . . the reasons for that weight."  20 C.F.R. § 404.1527(c)(2); SSR 96-2p.  In particular, the ALJ explained: Dr. Quirbach's opinion was conclusory; the opinion lacked a meaningful explanation for why Wenzel could not work full time, even though he was generally capable of light work; the opinion relied on Wenzel's subjective complaints, which the ALJ found not to be credible; and the opinion was, at least to a degree, undercut by Dr. Quirbach's own treatment notes, which indicated that Wenzel had recently done some amount of physical work fixing up apartments. Although other allocations of weight to the medical opinions may have been possible on this record, the ALJ adequately explained his reasons for discounting Dr. Quirbach's opinion, and those reasons are supported by substantial evidence in the record.

**B.   Credibility Determination**

Wenzel argues that the ALJ erred in finding that his subjective reports of pain and functional limitations were not credible.  "Because symptoms, such as pain, sometimes suggest a

greater severity of impairment than can be shown by objective medical evidence alone, any statements of the individual concerning his or her symptoms must be carefully considered[.]" SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996); see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). A two-step analysis governs an ALJ's evaluation of symptoms such as pain. SSR 96-7p, 1996 WL 374186, at *2. First, the ALJ considers whether the claimant is suffering from "an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms." Id. If the claimant meets that threshold, the ALJ moves to the second step:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Id.

At step one, the ALJ in this case found that Wenzel's medically determinable symptoms could reasonably be expected to cause his alleged symptoms. At step two, however, the ALJ found

14

that his "statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the [] residual functional capacity assessment." Tr. 12. Wenzel contends that the ALJ misconstrued several treatment notes to support his negative credibility finding, and failed to adequately consider the limiting effects of his use of narcotic pain medication. I disagree.

Wenzel quibbles with a number of the record citations the ALJ used to explain his determination. Specifically, he argues that the ALJ: put too much emphasis on instances where his physicians noted that his pain was mild or stable or improving; failed to explain why either his doctors' statements that he was able to work or the treatment notes indicating that he had engaged in some work supported a finding that he was able to work on a full-time basis; noted that a single straight leg raise test was negative without mentioning the many positive straight leg raise tests; referenced several diagnostic tests as support for his position when the tests did not rule out his symptoms; failed to explain why his decision not to follow up with physical therapy appointments is relevant in light of his ability to do the same exercises at home; and determined that he

had not used his pain medicines appropriately on the sole basis of a single treatment note indicating that he needed a refill a little early.

Wenzel's contentions have some force, insofar as he accurately details why each of the ALJ's record citations is limited in its probative value.  Nonetheless, each citation does still have some probative value, and the combined weight of the record support is enough to meet the substantial evidence bar.  Most persuasively, the ALJ's credibility determination finds support in the diagnostic imaging tests that revealed only "minor" degenerative disk and facet joint disease, Tr. 176, the various record references to Wenzel continuing to do some amount of physical work painting and refurbishing, see Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010) (although "performance of household chores or the like ought not be equated to an ability to participate effectively in the workforce, evidence of daily activities can be used to support a negative credibility finding"), and the several instances in the treatment notes where Wenzel was described as being in only mild pain or distress.  I must defer to the ALJ's determination where, as here, it is supported by specific findings and is based on substantial record evidence.  See Frustaglia v. Sec'y

of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). Moreover, to the extent that the record also contains contrary evidence that supports Wenzel's reports of disabling pain, the ALJ's opinion demonstrates that he reviewed the entire record, and it is the duty of the ALJ, not a reviewing court, to resolve conflicts in the evidence.  See Irlanda Ortiz, 955 F.2d at 769.

Wenzel's next argument is that the ALJ failed to adequately address the side effects of his Oxycontin use.  Pursuant to Avery v. Secretary of Health and Human Services, an ALJ must consider a number of factors in his credibility analysis, including "[t]he type, dosage, effectiveness, and side effects of any medication" the claimant has taken.  797 F.2d 19, 22-23 (1st Cir. 1986); see 20 C.F.R. 404.1529(c).  Although an ALJ is expected to inquire into and consider all relevant factors, his decision need not contain an explicit written analysis of each. Vega v. Astrue, Civ. No. 11-10406-WGY, 2012 U.S. Dist. LEXIS 44416, at *19-21 (D. Mass. Mar. 30, 2012) (citing several cases for that proposition).

In this case, Wenzel argues that the ALJ failed to consider his hearing testimony vis-à-vis the side effects of his Oxycontin use.  At the hearing, Wenzel became disoriented and explained to the ALJ that he had just "spaced out" because his

Oxycontin had "kick[ed] in."  Tr. 34.  He also testified that he had difficulties with memory and concentration and could not drive while taking the medication.  These limitations do not appear to infringe on his ability to perform light work, however, and neither the treatment notes nor the medical opinions indicate that any of the side effects of Wenzel's Oxycontin use would limit his ability to perform a job at that level of exertion.  Accordingly, it was not error for the ALJ to opt against including a written discussion of the side effects of Wenzel's medication.  See Vega, 2012 U.S. Dist. LEXIS 44416, at *19-21.

### IV.   CONCLUSION

For the foregoing reasons, I grant the Commissioner's motion to affirm (Doc. No. 12) and deny Wenzel's motion to reverse (Doc. No. 9).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

                                         /s/Paul Barbadoro
                                         Paul Barbadoro
                                         United States District Judge

July 6, 2012

```
cc:    Jeffry A. Schapira, Esq.
       Robert J. Rabuck, Esq.
```